IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TERI LAMPLOT, JOEL LAMPLOT, RICHARD SMITH, DONNA SMITH, PATRICK HOYT, JOANNE HOYT, LEON BRUNS, LARRY KRUSEMARK, and LEONARD PETERS, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 4:06CV3075 |
| V. | ) ) | |
| DAVE HEINEMAN, JON C. BRUNING, MARY JANE EGR EDSON, JANET A. LAKE, and GENE NILAN, | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) ) | |

This matter is before the court on defendants Dave Heineman, Jon C. Bruning, Mary Jane Egr Edson, Janet A. Lake and Gene Nilan's motion to dismiss.  Filing No. 13. Additionally before the court is plaintiffs' (Teri Lamplot and Joel Lamplot, collectively "Lamplots"), Richard Smith and Donna Smith (collectively "Smiths"), Patrick Hoyt and Joanne Hoyt (collectively "Hoyts"), Leon Bruns, Larry Krusemark, and Leonard Peters) motion to strike exhibit index (Filing No. 25) and related references.  Filing No. 26.  This case concerns the alleged violation of civil rights related to the collection and remittance of motor vehicle fuel tax by the State of Nebraska from motor vehicle fuel retailers located in an area disputed over whether it is within the boundaries of a federally recognized Indian reservation.  Jurisdiction is proper under 28 U.S.C. § 1331, providing this court original jurisdiction over all civil actions arising under the Constitution and laws of the United States.

**Background**

Defendant Dave Heineman currently serves as Governor of the State of Nebraska ("State"); defendant Jon C. Bruning is Attorney General of the State; defendant Mary Jane Egr Edson is the Tax Commissioner for the State; defendant Janet A. Lake is the Administrator for the Nebraska Department of Revenue Motor Fuels Division; and defendant Gene Nilan is the Manager for the Nebraska Department of Revenue Motor Fuels Division.  Filing No. 1.

The plaintiffs are all residents of Thurston County, Nebraska, and Pender is a town located in Thurston County.  Plaintiffs allege Pender is outside the area federally recognized as an Indian Reservation ("Reservation") occupied by the Omaha Tribe of Nebraska ("Tribe").  The Smiths own Smith Farm Service, Inc., a retailer of motor vehicle fuel in Pender.  The Hoyts own Neska Oil, another motor vehicle fuel retailer in Pender. Neither Smith Farm Service, Inc., nor Neska Oil ("Retailers"), is named as a party in this action.  The Retailers serve both Native Americans and non-Native Americans alike.  The Hoyts and Smiths allege they are both purchasers and sellers of motor vehicle fuel in Pender.  Bruns, Krusemark, Peters, and the Lamplots are purchasers of motor vehicle fuel from Retailers.

At issue in this case is an agreement ("Agreement") between the State and the Tribe, made effective October 1, 2005.  Filing No. 1, Part 1, pp. 16-26.  In this Agreement, the State agreed to exempt from state taxes any motor fuel received in the boundaries of the Reservation.  *Id.*, p. 19, ¶ 3.  The Agreement incorporated the Tribal Council of the Tribe's previously enacted ordinance permitting the Tribe to tax the receipt of motor fuel in its boundaries, at the same rate and base of transaction as that provided under the

2

State's laws.  *Id.*, p. 19, ¶ 4.  According to the Agreement, the State collects this tax and is required to remit the amount due to the Tribe on a monthly basis.  *Id.*, p. 20-21, ¶¶ 9, 10.

The Agreement between the State and the Tribe provides that exemption from the State tax applies to those "retail outlets located on the Reservation in Nebraska and within the boundaries of the Reservation in Nebraska as are set forth in the Preamble of this Agreement."  *Id.*, p. 19-20, ¶ 6.  The preamble, in turn, refers to the Reservation and "Tribe's Service Area."  *Id.*, p. 16.  Attached to plaintiffs' complaint is a letter from the State, signed by defendant Janet A. Lake, to plaintiff Teri Lamplot defining the tribal service area as the "geographic area in which tribal services and programs are provided to Native American people."  *Id.*, p. 27.  This letter specifically lists several businesses, including Retailers, as fuel retailers within the boundary areas agreed upon in the Agreement.  *Id.* Also included with plaintiffs' complaint is a letter from the State, signed by defendant Dave Heineman, to the Hoyts, stating "the inclusion of the Village of Pender in this [A]greement is proper."  *Id.*, p. 30.  The State further provides in this letter that during Agreement negotiations, the State and Tribe agreed to include the retail fuel outlets in Pender "as if they were within the boundaries of the [Reservation]."  *Id.*

Plaintiffs allege they purchased motor fuel from the Retailers, located outside the Reservation, but paid tribal tax on their purchases.  According to plaintiffs, the Retailers remitted tribal taxes to the State, and for the period between October 1, 2005 and December 31, 2005, the State remitted $108,550 in tribal tax to the Omaha Tribe. Plaintiffs maintain that since this time, the State has continued to remit tribal taxes. Plaintiffs contend they are paying an unconstitutional tribal tax that amounts to "taxation without representation."  Filing No. 23.

3

Plaintiffs brought suit in this court alleging violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Neb. Rev. Stat. § 66-741 (2001). Specifically, plaintiffs contend defendants violated their rights by treating them as Native Americans and subjecting them to a discriminatory tribal tax in violation of their equal protection and substantive due process rights (Claim I); deprived them of a protected interest and freedom from unlawful taxes in violation of their substantive due process rights under the Due Process Clause of the United States and the Nebraska Constitution (Claim II); and acted under color of state law by enforcing the Agreement and forcing them to pay unconstitutional tribal taxes not otherwise imposed on State residents in violation of their equal protection rights (Claim III). In their last claim for relief, plaintiffs contend the defendants violated Neb. Rev. Stat. § 66-741 (2001), the statute permitting the State to negotiate agreements with federally recognized Indian tribes for the collection and dissemination of motor fuel tax on federally recognized Indian reservations, by failing to abide by the geographic limitation therein (Claim IV). Filing No. 1.

Plaintiffs request that this court enter judgment declaring the Agreement violative of the Fourteenth Amendment and unenforceable in Pender. Plaintiffs further request that this court issue permanent injunctions prohibiting defendants, their employees, agents, and all persons acting under their direction, from enforcing the Agreement in Pender, and reinstate the State motor fuel tax currently in place in the State. Additionally, plaintiffs seek the award of compensatory and general damages against all defendants, as well as attorney fees and costs. Filing No. 1.

Defendants request the dismissal of plaintiffs' case, arguing plaintiffs failed to include one or more indispensable parties to the action (Fed. R. Civ. P. 19, Fed. R. Civ. P.

12(b)(7)); this court lacks subject matter jurisdiction because plaintiffs failed to state a claim upon which relief can be granted under both 42 U.S.C. §§ 1981(a) and 1983 (Fed. R. Civ. P. 12(b)(1)); and plaintiffs failed to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). Filing No. 13. After reviewing the case, party briefs, and the relevant law, the court will address the 12(b)(1) and 12(b)(7) arguments, thereby obviating the need to further evaluate any additional bases for dismissal.

**Analysis**

**1. Rule 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a court is required to dismiss a claim if the court lacks subject matter jurisdiction over it. However, a dismissal based on lack of subject matter jurisdiction will not be granted lightly. *Wheeler v. St. Louis S.W. Ry.*, 90 F.3d 327, 329 (8th Cir. 1996). For the court to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged either on its face or on the factual truthfulness of its averments. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge to jurisdiction, all of the factual allegations regarding jurisdiction would be presumed true and the motion could succeed only if the plaintiff had failed to allege an element necessary for subject matter jurisdiction. *Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824, 829 (8th Cir. 2003). In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. *Id.*

"Section 1983 is a [C]ongressional enactment that expressly creates liability for 'every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia' deprives an individual of any 'rights,

privileges, or immunities secured by the Constitution' or other federal law." *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006); 42 U.S.C. § 1983.  However, a litigant cannot simply allege a violation of § 1983 as "§ 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).  Rather, § 1983 is a mechanism for enforcing individual rights, so a litigant asserting a claim for relief under § 1983 must prove deprivation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation occurred under color of state law.  *Id.*; *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Congress enacted 42 U.S.C. § 1981 to prevent racial discrimination, *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987), thereby guaranteeing that all citizens have the same rights and benefits under the law as white citizens.  42 U.S.C. § 1981 (2006).  To establish a § 1981 claim, a litigant must ultimately prove the defendant intended to discriminate on the basis of race.  *Harris v. Hays*, 452 F.3d 714, 718 (8th Cir. 2006); *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006).

Plaintiffs contend their rights have been adversely affected by defendants' interpretation and application of the Agreement.  Filing No. 23.  Therefore, plaintiffs argue they constitute an affected party that may properly sue to protect their constitutional rights. *Id.*  Plaintiffs maintain they have been forced to pay unconstitutional tribal taxes for which they have received no benefit.  *Id.*  As such, plaintiffs assert that they properly brought their 42 U.S.C. § 1981 claim, pursuant to 42 U.S.C. § 1983, because plaintiffs have a constitutional right to be free from paying taxes to a  government that does not represent their interests.  *Id.*

6

Defendants however, argue that 42 U.S.C. § 1983 does not create a private cause of action, and plaintiffs have failed to allege what rights, if any, they have lost as a result of the Agreement. Filing No. 14. Defendants contend the tribal taxes plaintiffs pay are identical to the taxes assessed under the State motor vehicle fuel tax. *Id.* Further, defendants maintain the tribal tax is not predicated upon race, and is assessed equally by those who purchase or sale gasoline on the territory of the Reservation. *Id.*; Filing No. 24. Defendants argue plaintiffs have not proved what benefits they are deprived of and have failed to establish jurisdiction under 42 U.S.C. § 1983. Filings Nos. 14, 24.

The court finds plaintiffs have failed to allege a deprivation of rights under § 1983. Absent from plaintiffs' cause of action is any allegation that the State is not free to enter into agreements like the Agreement at issue. Indeed, Neb. Rev. Stat. § 66-741 authorizes the State Governor to enter into agreements with tribes in the State regarding motor fuel tax. Under such authority, the Governor, an official elected by residents of the State, can legally obligate the State in the manner it sees fit. Plaintiffs contend that the State has failed to abide by the geographic terms of the Agreement, but plaintiffs have not claimed that the State has improperly collected or remitted motor vehicle fuel tax causing any loss of any right under the Constitution or laws of the United States. Therefore, under § 1983 plaintiff has not alleged a cause of action and plaintiffs' action is dismissed as this court is without jurisdiction under Rule 12(b)(1).

## 2. Rule 12(b)(7)

Alternatively, the court finds that the case must be dismissed because plaintiff has failed to join a necessary and indispensable party to this action under Federal Rule of Civil Procedure 12(b)(7). Pursuant to Rule 12(b)(7), a party may move to dismiss the action on

the basis that the plaintiff failed to join a party under Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7).  The party asserting the defense of failure to join assumes the burden of proving the absent party is necessary for a just adjudication. 7 Charles Alan Wright et al., Federal Practice and Procedure § 1609 (3d ed. 2006).  Rule 19(a) requires joinder of a person amenable to service of process whose joinder will not destroy jurisdiction if:

> [a](1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

   Under Rule 19(b), if the court finds an absent party is "necessary" under Rule 19(a), but joining that party would destroy the court's subject matter jurisdiction, the court must determine whether the absent party is "indispensable" and dismiss the case, or if "in equity and good conscience the action should proceed among the parties before [the court]." Fed. R. Civ. P. 19(b); *Baker Group, L.C. v. Burlington N. & Santa Fe Ry.*, 451 F.3d 484, 490-91 (8th Cir. 2006).[1]  Therefore, Rule 19(b) "authorizes a district court to exercise its

---

[1]The older version of Rule 19 emphasized classification of parties as "necessary" or "indispensable," whereas the amended version of Rule 19 "emphasizes the pragmatic consideration of the effects of the alternatives of proceeding or dismissing."  *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 n.12 (1968).  While the conclusion should be the same under both approaches, the inquiry into whether a person is "necessary" or "indispensable" had, in the past, created "undue preoccupation with abstract classifications of rights or obligations, as against consideration of the particular consequences of proceeding with the action and the ways by which these consequences might be ameliorated by the shaping of final relief or other precautions."  *Id.* (*quoting* Fed. R. Civ. Pro. 19 advisory committee's note on 1966 amendments).

8

equitable powers to dismiss an action if a party regarded as 'indispensable' cannot be joined." *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 746 (8th Cir. 2001).

Courts evaluate indispensability under Rule 19 based on pragmatic considerations of efficiency and fairness. *Baker Group, L.C.*, 451 F.3d at 491; *Pujol v. Shearson/American Express*, 877 F.2d 132, 134 (1st Cir. 1989). Whether a party is indispensable is a context-specific case determination. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968). The court evaluates four factors to determine whether a party is indispensable:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; [and] fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The defendants argue that if plaintiffs prevailed in their suit, the Tribe's land would be diminished and the Tribe would suffer loss of revenue from the motor fuel tax they currently receive under the Agreement. Filing No. 14. Defendants maintain the plaintiffs seek relief in the form of modification of the Agreement, thereby requiring the Tribe's presence in this action. Filing No. 24. Defendants also note a conflict of interest exists between defendants' interests and that of the Tribe's and, therefore, defendants cannot adequately defend the Tribe's interests in this litigation. *Id.* Defendants further argue the Tribe is an indispensable party that must be present to protect its interests. Filing No. 14. Additionally, the defendants maintain dismissal is warranted because the Tribe is a sovereign nation not subject to joinder. *Id.*

Plaintiffs contend the defendants failed to establish that the Tribe is a necessary party as is required in a Rule 19(b) assessment.  Filing No. 23.  Plaintiffs argue that the "collection of a tribal tax on off-reservation motor fuel sales affects neither the contract rights of the [State] nor the [Tribe]."  Filing No. 23.  The plaintiffs state the crux of this action concerns enforcement of the Agreement to retail fuel outlets outside the Reservation, and the "Tribe is not a necessary party in deciding any of the issues in this case."  Filing No. 34.  Additionally, plaintiffs assert the relief they seek, if given, would not alter the terms of the Agreement; rather, the parties to the Agreement would continue to abide by the Agreement and tribal tax would not be collected in non-reservation areas. Filing No. 23.  Plaintiffs maintain the Tribe does not have a legally protectable interest because the Agreement is not applicable to motor vehicle fuel sales occurring outside the Reservation, "[a]lthough the Tribe may be indirectly affected financially if the State officials' erroneous application of the Agreement to off-reservation sales [ends]."  *Id.*  The plaintiffs argue that if necessary, the Tribe could seek leave to intervene in this action, and the Tribe's status as a federally-recognized Indian Tribe "has no effect" on the Tribe's failure to be joined as a necessary and indispensable party.  *Id.*

Plaintiffs allege the harm of paying tribal taxes when purchasing fuel from Retailers, purportedly located outside the Reservation boundaries.  Defendants claim the State has not argued that Pender is included within the boundaries, and it will not do so.  Filing No. 31.  Regardless of the parties' stances, the court takes no position concerning the merits of whether Pender is included within the Reservation boundaries.  The parties should not conclude, as the court makes no finding in this memorandum and order, that Pender is located within the Reservation boundaries.  Rather, this court finds the Tribe must be a

10

party to this action to determine whether the Retailers are included within the geographic area contemplated by the Agreement. "As a general rule, an action to set aside a contract requires the joinder of all parties to the contract[.]" 4-19 Richard D. Freer, Moore's Federal Practice - Civil § 19.06 (3d ed. 2006). Although plaintiffs contend their suit concerns only the enforcement of the Agreement, rather than the Agreement itself, the court cannot and will not interpret the application of a contract without the parties liable to it.

The court finds that in accordance with Rule 19(a), defendants have established the elements necessary for joinder of the Tribe. *See* Fed. R. Civ. P. 19(a). First, the Tribe, which is located in Nebraska, is subject to service of process within the court's jurisdiction. *See* 28 U.S.C. §§ 107, 1391(b). Second, the court has federal subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and, therefore, joinder of the Tribe will not deprive the court of its jurisdiction.

In assessing the sufficiency of the third element, the court finds the Tribe's absence may impair the Tribe's ability to protect its interest, and the existing parties may incur the risk of multiple and potentially inconsistent obligations. *See* Fed. R. Civ. P. 19(a). If this court were to furnish the relief plaintiffs request, enter judgment declaring the Agreement violative of the Fourteenth Amendment, issue permanent injunctions prohibiting defendants from enforcing the Agreement in Pender, and reinstate the State motor fuel tax in Pender, the court would, in effect, be declaring a contractual obligation unconstitutional and unenforceable by the parties to it. Any judgment by this court declaring the nullity of the Agreement would threaten the Tribe's contractual interests, its fundamental economic relationship with the State, as well as its sovereign capacity to negotiate contracts. Furthermore, the Tribe has a right not to have its legal duties judicially determined without

11

consent.  Accordingly, the defendants have sufficiently demonstrated that the Tribe is a necessary party to this dispute, and that defendants cannot adequately represent the Tribe's varied interests.

Although it is a necessary party under Rule 19(a), joinder of the Tribe is not feasible as it enjoys sovereign immunity from suit.  *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 754-56 (1998).  "[Native American] tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991).  Thus, absent clear waiver by the tribe or congressional abrogation, suits against Native American tribes are barred by sovereign immunity.  *Id.*; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

Because joinder is not possible, under Rule 19(b), the court must decide whether the Tribe is "indispensable."  Applying the Rule 19(b) factors from the dual perspective of fairness and efficiency, the court concludes that the Tribe is also indispensable for reasons similar to those rendering the Tribe a necessary party.  First, any judgment on plaintiffs' claim would prejudice the Tribe's economic interests in the Agreement with the State and its interests as a sovereign in negotiating contracts.  Moreover, any judgment rendered in the absence of the Tribe would prejudice the State because it would hinder its ability to resolve its contractual obligations with the Tribe.  Second, the court is unable to shape the relief sought in a way that mitigates this prejudice to the Tribe and the State.  Third, any judgment entered by this court without joining the Tribe would be inadequate because the Agreement currently binds the Tribe and the State.  Judgment by this court declaring the Agreement unconstitutional and unenforceable in Pender would affect the Tribe's interest without affording the Tribe an opportunity to protect its rights under the Agreement.

12

Finally, under the fourth factor, sovereign immunity prevents the plaintiffs from pursuing their claims in an alternative legal forum. Therefore, the unavailability of an alternative forum factor weighs in favor of allowing this action to proceed in the absence of the Tribe. However, "lack of an alternative forum does not automatically prevent dismissal of a suit." *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991) (*quoting Makah Indian Tribe v. Verity*, 910 F.2d 555, 560 (9th Cir. 1990)). A strong policy exists favoring dismissal when a court cannot join a tribe because of sovereign immunity. *Davis v. United States*, 192 F.3d 951, 960 (10th Cir. 1999). Recognizing that plaintiffs will not likely have an adequate remedy elsewhere, "this does not mean that an action should proceed solely because the plaintiff[s] otherwise would not have an adequate remedy, as this would be a misconstruction of the rule and would contravene the established doctrine of indispensability." *Wichita & Affiliated Tribes v. Hodel*, 788 F.2d 765, 777 (D.C. Cir. 1986).

The court holds that the foregoing factors weigh in favor of indispensability. In equity and good conscience, this court finds plaintiffs' action against the State should not proceed in the Tribe's absence. Accordingly, the court finds that the Tribe is both a necessary and indispensable party to plaintiffs' cause of action. Pursuant to Rules 12(b)(1) and (7), the court grants defendants' motion to dismiss.

IT IS ORDERED:

1.    Defendants' motion to dismiss, Filing No. 13, is granted;

2.    The plaintiffs' claims against all defendants, Filing No. 1, are dismissed without prejudice;

3.    Plaintiffs' motion to strike, Filing No. 26, is denied as moot;

13

4.      A separate Judgment in accordance with this Memorandum and Order will
be entered.

DATED this 29th day of November, 2006.

BY THE COURT:


s/Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief United States District Judge

14